## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| TROY THOLEN, JENNIFER THOLEN, and SLIP SHOT WATER SPORTS L.L.C., | |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| vs. | **Case No.  2:07CV645DAK** |
| STEPHEN OSTLER, ALLAN OSTLER, RICHARD GRIFFIN, ROBERT GRIFFIN, SARRA L.L.C., and INVESTMENT LENDING INC., | |
| Defendants. | |

This matter is before the court on Plaintiff's Motion for Partial Summary Judgment and Defendants Richard Griffin, Robert Griffin, and Investment Lending, Inc's (collectively "the Griffin Defendants") Motion for Summary Judgment.  The court held a hearing on the motions on September 22, 2008.  At the hearing, Plaintiffs were represented by Jacob C. Briem, Defendants Stephen Ostler, Allan Ostler and SARRA L.L.C. were represented by Douglas E. Griffith, and the Griffin Defendants were represented by Randy Spencer.  The court has carefully considered the memoranda, exhibits, declarations, and other materials submitted by the parties, as well as the facts and law relevant to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Over the period of one year, the Tholens invested approximately $250,000 in an investment fund named SARRA.  The Tholens invested in SARRA based on the representations of Stephen Ostler, SARRA's president, and the documentation provided by him from SARRA.

SARRA is a limited liability company that sells unregistered securities.  The principals of SARRA are not registered securities brokers.  SARRA provided the Tholens with a Subscription Booklet stating that the offering of securities had not been registered and was being made pursuant to Rule 506 of Regulation D under Section 4(2) of the Securities Act of 1933, as amended.

The Tholens were not represented by a purchaser representative when they invested in SARRA.  Troy Tholen filled out an Investor Questionnaire that was in the Subscription Booklet. The parties dispute the extent to which they discussed the Tholens' previous investment experience.

The Tholens assert that prior to their investment in SARRA, Ostler told them that SARRA's investment strategy focused on diversified investments to minimize the risk.  The Private Placement Memorandum SARRA provided to the Tholens states that the investments were diversified in three principal areas:  1) hard money lending; 2) bridge loans; and 3) real estate projects.

The Tholens initially invested $150,000, and received a Promissory Note, dated July 25, 2006, stating the terms of the investment.  On September 22, 2006, the Tholens received a revised Promissory Note.  On October 23, 2006, the Tholens invested an additional $10,000 in SARRA through their company Slip Shot Water Sports L.L.C. and received a Promissory Note on the same date.  On March 23, 2007, the Tholens invested $90,000 in SARRA and received

another Promissory Note.

The Tholens received disbursements consistent with the terms of the Promissory Notes from October 2006 until April 2007.  The Tholens claim that the disbursements ended in April 2007, but SARRA claims that some further disbursements continued.

SARRA sent a letter to the Tholens, dated April 24, 2007, stating that its purpose was "to disclose certain material information with respect to recent developments involving the Company and its investments."  The letter informed the Tholens that a substantial amount of SARRA's assets had been invested in the projects of Robert Casey Hall, whose companies had been accused by the Securities and Exchange Commission in a complaint in federal court of being illegal Ponzi schemes.  In the SEC action against Robert Casey Hall, all assets in his companies were frozen.

On August 20, 2007, SARRA sent the Tholens another letter stating that from December 1, 2006, through March 31, 2007, SARRA loaned in excess of $10 million to entities managed and controlled by Robert Casey Hall.  Because the asset freeze terminated payments to SARRA, it resulted in SARRA's inability to meet its obligations to its own investors.  The parties dispute whether SARRA had significant losses in its prior investments which led it to invest heavily in SARRA.

The Tholens assert that SARRA has failed to perform according to the terms of the Promissory Notes by not paying the monthly payments as agreed in the Promissory Notes.  The Promissory Notes provided that they "shall be in default upon the happening of any one of the following events:  (1) Maker shall breach any representation, warranty or covenant of the Maker set forth herein and/or any other document, agreement or instrument executed and delivered in connection herewith . . . (4) default of any term or condition contained in this Note."  If any

default is not cured within thirty days, the Promissory Notes allow the Holder the option to "declare the entire unpaid principal balance, together with any other charges, to be immediately due and payable."

## DISCUSSION

### <u>Plaintiffs' Motion for Partial Summary Judgment</u>

The Tholens assert that the undisputed facts establish that it was unlawful for Defendants to sell them unregistered securities and that they entered into the investment relationship with SARRA based on material misrepresentations and omissions concerning the diversity of investments and prior operating losses.  And, in any event, the Tholens contend that Defendants failed to perform pursuant to the terms of the Promissory Notes.  Defendants assert that there are unresolved issues of material fact with respect to the Tholens' securities law causes of action and that the breach of promissory notes claim can only be asserted against SARRA as maker of the notes.

*1.  Securities Violation Claims*

A.  Section 4(2) and Rule 506

The Tholens argue that Defendants violated Section 4(2) of the Securities Act of 1933 and Rule 506 of Regulation D because Defendants knew:  1) they were selling unregistered securities; 2)  the Tholens were not accredited investors; 3) the Tholens were not represented by a purchaser representative; 4) the Tholens did not qualify as "purchasers" under Rule 506; and 5) that material misrepresentations and omissions concerning the diversity of investments and the Defendants' control over the investments were repeatedly made both orally and in writing.

Rule 506 of Regulation D allows sellers of unregistered securities to do so under certain circumstances that provide adequate protection for investors.  Sales of unregistered securities

made under Rule 506 may be made to an unlimited number of accredited investors and up to "35 other purchasers."  Defendants concede that the Tholens are not accredited investors.  The "other purchasers" are limited to purchasers who are sufficiently sophisticated such that each purchaser "has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment."

The Tholens argue that the disclaimer in SARRA's Subscription Booklet that SARRA was only selling unregistered securities under Rule 506 of Regulation D to investors who met the suitability qualifications of that rule was merely for show.  The Tholens assert that given the clarity of the Investor Questionnaire, Defendants should have known that the Tholens did not fall within the "purchaser" exemption of the rule.  The Tholens represent that they were not sophisticated investors and had limited prior investment experience. Accordingly, the Tholens contend that the court should grant summary judgment in their favor on their violation of Section 4(2) and Rule 506 claim.

The Tholens, however, cannot meet their burden of establishing that they do not fall within any exception to the general securities registration requirement found in Section 5 of the 1933 Act.  The applicability of the exception for sophisticated purchasers turns on the reasonable belief of the issuer, rather than the actual status of the purchaser.  *Anastasi v. American Petroleum Inc.*, 579 F. Supp. 273, 275 (D. Colo. 1984).  In this case, the documents and affidavits indicate that prior to entering into any relationship with the Tholens, Defendants had extensive discussions regarding their investment experience.  Defendants contend that the Plaintiffs asked sophisticated questions and represented that they had prior investment experience involving substantial sums.  Defendants also asserts that to ensure that Plaintiffs fully understood the risks and nature of the investment, Defendants provided Plaintiffs with an extensive private

placement memorandum that spelled out the risks and potential pitfalls of investing with SARRA.  Furthermore, in entering into the Subscription Agreement, Plaintiff's represented that "[b]y reason of [Plaintiffs'] business or financial experience, . . . the undersigned is capable of evaluating the merits and risks of an investment in the Company and of protecting its own interests in connection with the transaction."

But the Tholens claim that Defendants did not comply with Section 4(2) of Rule 506 which provides an exemption from registration "only when an offeree has had sufficient access to information similar to that made available to the offeree in a registration statement." *Andrews v. Blue*, 489 F.2d 367, 373 (10th Cir. 1973).  "While a buyer's sophistication, expertise and wealth may be factors for the factfinder to consider, they are not a substitute for access to information; without access to information, a buyer cannot bring his sophisticated knowledge to bear on an investment decision." *Anastasi*, 579 F. Supp. 273, 275 (D. Colo. 1984).  The Tholens contend SARRA never provided them with any financial materials.  Because of this alleged failure, the Tholens argue they cannot come within the exception of Rule 506 and they are entitled to summary judgment.

The court concludes that there are material issues of fact with respect to whether the Tholens fall within the exception for sophisticated investors in Rule 506.  There are disputes regarding the information provided and the discussions between the parties that preclude summary judgment on this issue.

B.  Section 12(a)(2) and Section 10(b)

The Tholens argue that although the dictates of the Securities Act with respect to truthfulness and disclosure are straightforward, Defendants failed to comply with such requirements.  Section 12(a)(2) of the Securities Act provides that a person who "offers or sells"

securities "by means of a prospectus or oral communication" that misrepresents or omits a

material fact is "liable to the person purchasing such security from him."  15 U.S.C. § 77l.  A

"prospectus" is defined as a "document soliciting the public to acquire securities*."  Gustafson v.

Alloyd Co., Inc*., 513 U.S. 561, 574 (1995).  Similarly, Section 10(b) provides that it is unlawful

"to use or employ, in connection with the purchase or sale of any security registered on a national

securities exchange or any security not so registered . . . any manipulative or deceptive device."

15 U.S.C. § 78(j)(b).

Defendants respond that Plaintiffs cannot recover for violations of state or federal anti-

securities fraud law because Plaintiffs cannot demonstrate that Defendants made a material

misrepresentation or omission of fact or employed some manipulative or deceptive device in

order to deceive them in connection with the purchase of securities.

The Tholens contend that the investments were not as diversified as they were

represented to be and that prior losses were not disclosed.  The Tholens assert that they relied on

the representations in the Subscription Booklet to their detriment.  Defendants, however, contend

that these alleged misrepresentations or omissions are disputed by documentary or testimonial

evidence and cannot provide a basis for summary judgment on this issue.

Defendants dispute that the investments were not properly diversified.  Defendants

contend that Mr. Hall represented to them that the investments would be fully diversified by him.

Defendants claim that they performed an extensive due diligence investigation of Mr. Hall and

his companies prior to making any investments with him.  According to Defendants, all of the

available information indicated that Mr. Hall and his companies were sound investments.

Regardless of Defendants attempts to diversify the investment, they claim that no representations

were ever made to the Tholens that investments would or would not be made or managed in any

particular manner.  None of the provisions in the written materials relied upon by the Tholens

support their assertions with respect to diversification.  One provision merely lists the areas in

which SARRA may invest.  In addition, the Private Placement Memorandum clearly indicates

that "there is no guarantee that the Company's investment will be made on the exact terms set

forth herein."  Furthermore, the oral representations allegedly made by Stephen Ostler are

contradicted and disputed by the Affidavit of Stephen Ostler.

 Defendants also dispute the existence of any prior losses.  Defendants assert that

Plaintiff's sole basis for this allegation is a conversation that took place between Angela Ostler

and Jennifer Tholen, in which nothing definitive was said.

 The court again finds that there are disputed issues of material fact that preclude summary

judgment.  Further discovery is necessary on several of Plaintiff's allegations.  Accordingly,

summary judgment is inappropriate.

 C.  Section 61-1-1 of the Utah Uniform Securities Act

 The Tholens also argue that Defendants violated state securities provisions that are

similar to the federal securities laws.  Section 61-1-1 of the Utah Code provides that it is

unlawful to employ any device or scheme to defraud, make any untrue statement of material act

or omit to state a material fact, or engage in any act or practice which operates as a fraud or

deceit upon any person in connection with the offer, sale, or purchase of any security.  Utah Code

Ann. § 61-1-1.  The Tholens contend that Defendants' misstatements about SARRA's

management, the diversity of the investments, and failure to disclose prior operating losses

violate  this provision.

 The court finds that the same disputed facts that are present in the federal securities fraud

claim precludes summary judgment on this state law claim as well.

*2. Breach of Promissory Notes*

The Tholens argue that there can be no dispute that there was a breach of the Promissory Notes. Plaintiffs fully performed their obligations under the notes when they invested in SARRA, and Defendants plainly admit that they have defaulted on the monthly payments under the notes. Defendants' default has damaged the Tholens because the outstanding principal balance remains unpaid as do the accrued interest and other charges. This failure is a material breach that goes to the essence of the Promissory Notes.

First, Defendants argue that the Tholens have not specifically limited their claim for breach of contract to SARRA. Defendants readily concede that SARRA has failed to make all of the payments specified in the promissory notes and thus may have breached its contract with the Tholens. However, Defendants contend that the Tholens have not adequately presented evidence against any other Defendant for breach of contract.

State law provides a liability shield to members and managers of an LLC which protects the principals from liability on any contract executed on by them on behalf of the company. *Ditty v. CheckRite* Ltd, 973 F. Supp. 1320, 1335 (D. Utah 1997); Utah Code Ann. § 48-2c-601. There have been no allegations or requests to pierce the veil in this case. Therefore, summary judgment cannot be entered against the individual defendants on the breach of contract claim.

In addition, Defendants argue that there are issues of material fact with regard to the Tholens' breach of contract claim against SARRA as well. Plaintiffs have alleged that SARRA stopped making payments to them in April 2007. Defendants, however, assert that some payments have been made since that date, though not in the amount required under the promissory notes. To the extent that the Tholens have received additional monies after April 2007, there exists a genuine dispute of material fact as to the amount of any breach by SARRA.

It is undisputed, however, that the payments made after April 2007 were not in compliance with the terms of the promissory notes and that no payments have occurred since September 2007.  According to the terms of the notes, this constitutes default and the principal is immediately due.  Moreover, the notes have reached maturity but the principal due under the notes has not been repaid.  This failure to repay the principal upon maturity is a breach of contract.  The court finds that there is no material issue of fact with respect to the breach of promissory notes claim against SARRA and the court grants the Tholens' summary judgment on this claim.

### Griffin Defendants' Motion for Summary Judgment

Defendants Richard Griffin, Robert Griffin, and Investment Lending Inc. ("the Griffin Defendants") move for summary judgment on all causes of action asserted against them.  As discussed above, Plaintiffs have asserted federal securities violations under Section 12(a)(2) of the 1933 Act, Section 10(b)(2) of the 1934 Act, Section 4(2) and Rule 506 of Regulation D, and state securities violations.  Plaintiffs have also alleged state common law claims of fraud, negligent misrepresentation, promissory estoppel, breach of contract, unjust enrichment, civil conspiracy, piercing the corporate veil, and accounting.

The Griffins were principals in SARRA.  Richard Griffin was the Action Manager of SARRA, and Robert Griffin was the Action Vice President of SARRA.  Investment Lending provided two loans for properties purchased by the Tholens.  Richard Griffin is a 50% owner of Investment Lending, and Robert Griffin was an independent loan officer of Investment Lending. Robert Griffin sent an appraiser to appraise one of the Tholens' homes referred to by the parties as "the Cresthill home."  The Tholens allege that this appraisal of the Cresthill home was inflated.

10

*1. Federal Securities Law*

The Tholens claims that Defendants Richard and Robert Griffin are liable for their own

actions under Section 10(b) and Rule 10b-5 on two bases:  (1) primary liability for their own

actions, and (2) control person liability under Section 20(a) of the 1934 act, 15 U.S.C. § 78t.

*a.  primary liability*

The elements of federal securities fraud pursuant to Section 10(b) and Rule 10b-5 are: (1)

a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale

of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation.

*Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341-42 (2005).  In *Central Bank of Denver*

*v. First Interstate Bank of Denver,* 511 U.S. 164 (1994), the Supreme Court found that secondary

actors may be primarily liable for their actions.  It held,

> Any person or entity, including a lawyer, accountant, or bank, who
> employs a manipulative device or makes a material misstatement (or
> omission) on which a purchaser or seller of securities relies may be liable
> as a primary violator under 10b-5, assuming all of the requirements for
> primary liability under Rule 10b-5 are met.

*Id.* at 191 (internal citations omitted.)

The Griffin Defendants argue that they cannot be held liable for any misrepresentations

which led to the Tholens investing in SARRA.  Defendants contend that the Tholens have only

alleged that they invested in SARRA based on the representations of Stephen Ostler and the

written document provided by Stephen Ostler from SARRA.  Because the Tholens gave no other

reason for investing in SARRA, the Griffin Defendants assert that they cannot be held liable for

misrepresentations that they did not make and of which they had no knowledge.

Richard Griffin claims that he has never met or talked to the Tholens.  Richard Griffin

also states that he did not know the Tholens were getting a loan through Investment Lending

prior to their investing in SARRA.  Robert Griffin claims that he never discussed the Tholens'
investment in SARRA with Stephen Ostler, Allan Ostler, or Richard Griffin.  In addition,
Defendants state that all funds from the Tholen loans due through Investment Lending went
directly to the Tholens, not to SARRA.

The Tholens, however, contend that they have always asserted that their investment in
SARRA was based on the representations made by the principals of SARRA, including both
Richard and Robert Griffin, and the documentation provided on behalf of SARRA.  The Tholens
claim that Troy Tholen met with the Griffins prior to investing in SARRA.  The Tholens contend
that the Griffin Defendants' argument that Investment Lending had no part in the SARRA
scheme, was an independent actor over which "Richard Griffin is only a 50% owner," and was
therefore uncontrollable and independent belies the facts.  SARRA shared office space with
Investment Lending, and the financial services provided by Investment Lending and the Griffins
were an indispensable service to investors, such as the Tholens, who lacked the resources to
invest without financing and refinancing real property.  The Tholens argue that this selling point
from the Griffins made SARRA an attractive investment.

The Tholens argue that Richard and Robert Griffin are liable as primary actors under
Section 10b and Rule 10b-5.  The Tholens claim that Defendants Richard and Robert Griffin
actively promoted SARRA and clearly approved of the SARRA documentation provided by
Stephen Ostler to the Plaintiffs.  Their representations were consistent and supportive of the
SARRA documentation, including the Subscription Booklet.  The Tholens claim that the
fundamental nature of the investment strategy as well as the management of the capital
commended to SARRA's care was misrepresented, the Plaintiffs relied on such representations
in the purchase of the securities, and Plaintiffs were damaged as a direct consequence.

Moreover, the Tholens contend that the disregard of for the truth made in the SARRA documentation, as well as the principals statements in the meeting with Troy Tholen, are evidence of the scienter requirement.

The court concludes that there are disputed issues of material fact with respect to whether the Tholens and the Griffins met prior to the Tholens investing in SARRA and the representations that were made at that meeting.  Discovery is ongoing in this case, and the court concludes that summary judgment at this time is inappropriate.

*b.  control person liability*

The Tholens also argue that "control person" liability of Section 20(a) is applicable to Defendants Richard and Robert Griffin.  The 1934 Act provides for the liability of individuals who are in management and officer positions:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation there under shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

The Griffins were principals of SARRA, managed SARRA, were officers of SARRA, and allegedly actively recruited investors in SARRA.  They controlled the actions of SARRA, the representations (and misrepresentations) made by SARRA, and determined what would be done with the investor funds surrendered to the care of SARRA.  Moreover, the Tholens contend that the Griffins actions were not in good faith, but rather were founded on misrepresentations that directly influenced Plaintiffs' decision to invest in SARRA.

The 1933 Act also contains provisions that hold an actor liable for the actions of a person and/or entity over which he exerts some control.  Section 15(a) states,

Every person who, by or through stock ownership, agency, or otherwise…controls any person liable under Section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

The Tholens contend that Richard and Robert Griffin were involved in the alleged misrepresentations themselves and were also aware of the actions of SARRA in selling unregistered securities to unsophisticated, non-accredited investors. Moreover, the Tholens argue that as officers of SARRA, the Griffins made management decisions of where and when to invest and to depart radically from the investment strategy espoused in the documentation provided by SARRA.

It is undisputed that the Griffins were principals, owners and members of the management of SARRA. The Tholens claim that the Griffins held themselves out as such, and much of the success in raising capital for SARRA was accomplished through the Griffins' financing and refinancing of real property through Investment Lending. The Tholens contend that Richard Griffin cannot now attempt to disavow his involvement in SARRA's management. Richard Griffin's disavowal of any knowledge of these practices is inconsistent with his ownership interest in Investment Lending as is his denial of any ability to manage Investment Lending. As an owner of 50% of the business, he has an equal or greater ownership interest than anyone else. The Tholens argue that without Investment Lending they would never have been able to invest in SARRA. They simply did not have the disposable income to do so.

Again, the court concludes that there are factual disputes that preclude summary judgment on control person liability. The parties dispute the Griffins' management role in

14

SARRA and their involvement and knowledge in the representations made to the Tholens.  The

court finds these facts material to the claim.  Accordingly, summary judgment is not appropriate.

*c.  Rule 506 claim*

As to the sale of securities to an unqualified person, the Griffin Defendants assert that the

Tholens improperly argue that they do not fall within Rule 506's exception for other

knowledgeable investors.  The court has found that there is a genuine issue of material fact as to

whether the Tholens qualify as having sufficient knowledge for that exception.  The Griffin

Defendants argue that they cannot be liable under this claim because Stephen Ostler made the

decision about whether the Tholens were suitable to invest in SARRA, not the Griffin

Defendants.  But there is a dispute between the parties as to the involvement of the Griffins and

their presence at the meeting before the Tholens decided to invest.  Given these factual disputes,

the court concludes that summary judgment would be improper.

*2.  State Securities Law Claims*

The Utah Uniform Securities Act prohibits untrue statements of material fact or

omissions of material facts:

> It is unlawful for any person, in connection with the offer, sale, or
> purchase of any security, directly or indirectly to:
> …
> (2)  make any untrue statement of material fact or to omit to state a
>       material fact necessary in order to make the statements made, in light
>       of the circumstances under which they are made, not misleading; or
> (3)  engage in any act practice or course of business which operates or
>       would operate as a fraud or deceit upon any person.

Utah Code Ann. § 61-1-1.  The Utah Uniform Securities Act also makes it clear that "[a] person

who offers, sales, or purchases a security in violation of subsection 61-1-1(2) is liable to the

person…buying the security from him…"  *Id.* at § 61-1-22(1)(a).  Not only is the person who

offers or sells securities in violation of Subsection 61-1-1(2) liable, but

> Every person who directly or indirectly controls a seller or buyer liable under subsection (1), *every partner, officer, or director* of such a seller or buyer, *every person occupying a similar status or performing similar functions, every employee* of such a seller or buyer *who materially aids* in the seller purchase…are also liable *jointly* and *severely* with and to the same extent as the seller or purchaser…

*Id.* at § 61-1-22(4)(a).  The only way a "nonseller" who is liable under Subsection 61-1-22(4)(a) can escape liability is if that nonseller can show "that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  *Id.*

As with the federal securities law claims, the court finds that there are disputed issues of material fact as to the knowledge and involvement of the Griffins.  In addition, there are questions of facts as to the representations made by the Griffins with respect to the nature of the investments.  Accordingly, summary judgment on the state law securities claim is similarly denied as to the Griffins.

The Griffin Defendants, however, also argue that it is clear that Defendant Investment Lending cannot be liable for the documentation provided by SARRA because the entities are separate corporations.  The court agrees that Investment Lending cannot be held liable for claims relating to misrepresentations in SARRA's written materials.  Accordingly, summary judgment is granted to Investment Lending on those claims.

*3.  State Common Law Claims*

The Griffin Defendants argue that they cannot be held liable for civil conspiracy, fraud, and other claims for relief for merely providing loans.  The Tholens, however, dispute the Griffin Defendants' role in the investment scheme and contend that questions as to their involvement preclude summary judgment.

*a. Civil conspiracy*

The Griffin Defendants argue that the reference to the Griffin Defendants' loans are only vaguely mentioned in Plaintiff's civil conspiracy claim and there are no facts to support the allegation. The Tholens claim that a civil conspiracy was formed between the principals of SARRA and Investment Lending to get Plaintiffs to invest in SARRA. The Tholens claim that they invested in SARRA based on SARRA's written materials and the oral representations made to Troy Tholen at a meeting with Stephen Ostler and the Griffins.

The Griffin Defendants claim that several of the alleged members of the conspiracy have never spoken about the Tholens' investment in SARRA and there can be no meeting of the minds as to an unlawful objective. These facts, however, are disputed by Troy Tholen's claim to have met with the Griffins and Ostler prior to investing in SARRA. Although not all of the Defendants may have ever met Mr. Strange, to prove a claim for civil conspiracy it is not necessary to prove that the parties actually came together and entered into a formal agreement to do the acts complained of by direct evidence. *Holmes v. McKey,* 383 P.2d 655, 665 (Okla. 1962). In fact, "conspiracy may be inferred from circumstantial evidence, including the nature of the act done, the relations of the parties, and the interests of the alleged conspirators." *Israel Pagan Estate, et al., v. Cannon, et al.,* 746 P.2d 785, 791 (Utah Ct. App. 1987).

Robert Griffin worked for Investment Lending, SARRA shared offices with Investment Lending, Richard Griffin is an owner of Investment Lending and Robert Griffin explained how to finance and refinance residential property in order to invest in SARRA. They each held management positions, Stephen Ostler served as their main contact point, Richard Griffin received the Subscription Booklets, Robert Griffin helped the Tholens refinance both their primary residence as well as the Cresthill home and chose the appraisers for the homes.

17

Based on the factual dispute between the parties as to the relationship and involvement of the parties, the court denies summary judgment.

*b. Alter ego*

The Tholens ask the court to pierce the corporate veil of both SARRA and Investment Lending in order to avoid an injustice that they claim would result from allowing Defendants to retain the benefits they received from their alleged misrepresentations and fraudulent conduct. The alter ego doctrine allows a court to pierce the corporate veil when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist . . . and the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979). "The rationale used by courts in permitting the corporate veil to be pierced is that if a principal shareholder or owner conducts his private and corporate business on an interchangeable or joint basis as if they were one, he is without standing to complain when an injured party does the same." *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987). *Colman* lists several fact specific factors necessary in determining whether to pierce the corporate veil. *Id.*

The Tholens argue that rendering summary judgment on Plaintiffs' state claims, while some discovery requests are pending and others have not been submitted, would render the discovery process irrelevant as any plaintiff would be required to have gathered its evidence prior to commencing any legal action. The court agrees that summary judgment on such a fact sensitive issue is premature in light of outstanding discovery on the issue.

### 3. Inflated Appraisal

Plaintiffs assert fraud and negligent misrepresentation causes of action against the Griffin Defendants for an allegedly inflated appraisal of the Tholens' Cresthill Home. Plaintiffs claim that the appraisal of the home was fraudulently inflated at the request of the principals of SARRA. The Griffin Defendants argue that they cannot be held liable for allegedly inflating the appraisal price of the Tholens' Cresthill home because there are no facts to support the claim and they had nothing to do with it.

In Leslie Strange's Answer to Plaintiff's Complaint, he states that he never spoke with Richard Griffin, Allan Ostler, and/or Stephen Ostler regarding the appraisal, his appraisal process was developed on a Uniform Residential Appraisal Report where specific information germane to the report is shown, he completed the form employing standards and guidelines customarily used in the profession, and the value he concluded upon was the lowest of three methods. Plaintiffs have agreed to dismiss Strange. The Griffin Defendants assert that if Strange cannot be held liable for the allegedly inflated appraisal, then they cannot be held liable for the appraisal or the alleged conspiracy associated with it.

The Tholens, however, argue that Robert Griffin sent the appraiser, Les Strange, to the Cresthill home specifically to inflate the value of the home so that the Tholens would have more money to invest in SARRA. The financing and refinancing of residential property was a preferred way to obtain investment capital and was actively promoted by the principals of SARRA. The appraisal came in significantly above the sale price of the home. When the Tholens attempted to refinance the property, they encountered significant delays. These delays were blamed on Mr. Strange's appraisal. Recently, the Cresthill home sold for $369,000.00, significantly less than the $500,000.00 it appraised for slightly more than a year ago. Although

Defendants claim no wrongdoing, the Tholens argue that the delay in refinancing, the self-admitted problems with the appraisal, and the subsequent low sale price of the Cresthill home raises significant questions with respect to the original appraisal.

The parties dispute whether or not the appraisal was inflated.  Because of this dispute, the court finds no basis for summary judgment on this claim prior to the close of discovery.  Several of the state common law claims are fact specific and summary judgment can be renewed on those claims after discovery is completed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART.  Plaintiffs are granted summary judgment on their breach of promissory note claim against SARRA, and the motion is denied in all other respects.  The Griffin Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  Investment Lending is granted summary judgment on Plaintiffs' securities claims regarding misrepresentations in SARRA's written materials.  The motion is denied in all other respects and can be renewed at the close of discovery.

DATED this 26th day of September, 2008.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge